August CORDEIRO et al.

v.

Joseph DeSANTIS et al.

No. 80–344–Appeal.

Supreme Court of Rhode Island.

Jan. 28, 1983.

Gerard McG. DeCelles, Providence, for plaintiffs.

Lind & Dillon, Edward E. Dillon, Jr., Cumberland, for defendants.

## OPINION

SHEA, Justice.

In this civil action, plaintiffs seek damages for personal injuries caused to their son who was struck by the defendants' automobile. A jury trial held seven years after the incident resulted in a verdict for the defendants. The trial justice granted the plaintiffs' motion for new trial. The defendants now appeal from the granting of that motion. We vacate the order granting a new trial.

On May 11, 1973, Richard Cordeiro, then twelve years of age, was struck by an automobile on Douglas Avenue in North Providence, Rhode Island. He suffered injuries to his leg in that collision.

In September 1975 the minor plaintiff, through his parents, August and Ann Cordeiro as next friends, brought suit in Superior Court against Joseph DeSantis, the driver, who was sixteen years old when the accident happened, and Josephine DeSantis, his mother, who was the registered owner of the vehicle.[1]

The facts are not complicated. The only actual witnesses to the accident were plaintiff and defendant driver. Richard testified that some daylight still remained at 6:30 p.m. on May 11, 1973. He had been "jogging" with a companion toward Douglas Avenue on his way to a carnival. Prior to crossing the northbound lane of Douglas Avenue from east to west, he emerged from a yard bordered by a row of hedges. He stopped and looked to his left and to his right before walking into the roadway.[2] Although he could see to the crest of the

hill about 100 feet away, he said he saw no cars approaching. Once in the road, he heard the sound of a horn and froze with fright. Richard testified that the oncoming vehicle was traveling at a rate of "maybe 20 to 30 miles an hour" when it struck him. He said he rolled onto the car's hood and then fell to the pavement, injuring his knee. At that point he was on the ground but "right against" the car. He was able to get up by himself after being hit.

Joseph testified he was driving at a speed of 25 m.p.h. in a 30 m.p.h. zone when he saw Cordeiro running along a hedge some fifty feet from where the contact occurred. Richard was "running" toward the road and, in fact, looked like he was being chased by his companion. Richard was about twenty feet from the street when the driver first spotted him. Upon seeing him, he immediately "hit the brakes, and * * * held the horn"; but the runner kept coming and finally ran into the roadway. Joseph estimated there was a time lapse of five to six seconds from when he first spotted Richard to the time of the collision. When he applied his brakes, the car skidded for ten to twelve feet and then, at the point of impact, "[t]he car had stopped, and the forward thrust, the rocking motion * * * hit him." The defendant said that, "apparently it must have been the bumper" that hit Richard because he fell back onto the road, ending up about one foot from the front of the car. Joseph also testified that he could not have swerved to avoid the runner because there was a car traveling toward him in the southbound lane. Throughout his testimony he maintained that from about the time he first saw plaintiff, he "locked the brakes" and "held the horn."

Richard's mother and his running companion, Paul Leonardo, both testified brief-

---

1. At the time of the trial, the trial justice explained to the jury that Richard Cordeiro was now old enough to maintain the suit in his own name, and therefore, "for all intents and purposes, this is a suit by Mr. Richard Cordeiro against Joseph and Josephine DeSantis." By

the time suit was commenced, defendant operator had also reached the age of majority.

2. Under cross-examination by defense counsel, Richard admitted that he was "sure" but not "positive" that he had stopped before stepping out onto the roadway.

ly, but neither individual had actually witnessed the accident. Other evidence related to the nature of Richard's injuries.

The jury returned a verdict for defendants. New trial motions were filed by plaintiffs. After argument on the motions, the trial justice discussed some of the testimony and gave his conclusions as follows:

"[The driver] had plenty of opportunity to observe the fact that there were two youngsters, whether they were running or jogging * * *. He saw them when they were still there off the road, and yet he apparently didn't do too much to attempt to avoid colliding with them * * *. If they were running, all the more reason for him to have slowed down before he reached the area there. The impact was heavy enough. There were skid marks on the defendant's own testimony of 10 to 12 feet long * * *. So in the court's view of the evidence, the defendant was guilty of negligence."

The trial justice said that in his opinion, plaintiff also was guilty of contributory negligence. He granted plaintiffs a new trial on the issues of liability and damages.

On appeal defendants argue that the trial justice erred in granting the new trial. Citing our decision in *Barbato v. Epstein,* 97 R.I. 191, 196 A.2d 836 (1964), they contend that the trial justice failed to state what evidence he accepted, what he rejected, or what inferences he drew as is required.

We have said on numerous occasions, "A ruling made by a trial justice on a motion for a new trial is entitled to great weight and will not be disturbed on appeal unless the trial justice has overlooked or misconceived material evidence or is clearly otherwise wrong." *Connors v. Gasbarro,* R.I., 448 A.2d 756, 759 (1982). In this case, it appears to us, after reviewing the record, that the trial justice overlooked or misconceived material evidence.

The plaintiff testified that he and a companion had been "jogging" along a hedge just prior to the collision. He stopped at the edge of the road, looked to the left and to the right, saw nothing, and then walked into the street. Once there, he heard the sound of a car horn and "froze" while a car traveling at the speed of 25 to 30 m.p.h. approached and finally hit him. On being struck, he rolled onto the hood and fell to the ground beside and close to the car.

The defendant driver told a slightly different story. He was traveling at 25 m.p.h. when he saw the running boy about fifty feet away, apparently being chased by another boy. He applied his brakes, held the horn, and skidded to a stop, at which point he struck the runner who had run out into the road. He said that although his car had stopped at the point of impact, the rocking motion of the car caused the vehicle to hit the boy. The boy fell beside the car, which had not traveled any farther after impact.

There was no evidence to indicate that Richard was dragged past the point of impact and nothing contradicted Joseph's claim that the car traveled no farther after the collision. Richard's companion testified he had "heard skid marks" and Richard admitted that he had heard the horn of the car. Richard himself seemed to question his own recollection of the events since he admitted to defense counsel that he was not positive he stopped before going into the street.

Taken together, all the evidence indicates that Joseph, while traveling well within the speed limit, upon seeing the boys almost fifty feet away, applied his brakes and sounded the horn before Richard ran into the road. Therefore, it is difficult to understand how the trial justice concluded that Joseph "didn't do too much to attempt to avoid colliding with [the boys]" and "did not anticipate * * * *at all*" that they might run into the road.

In so holding, the trial justice misconceived material evidence. That being so, we are required to apply the appellate rule. We shall consider the evidence in the record in the light most favorable to the prevailing party. If we determine there is any credible evidence that would support the jury's verdict, the verdict will be sustained. *Connors v. Gasbarro,* R.I. 448 A.2d at 759.

▮ There is evidence that indicates that the defendant was traveling at a reasonable speed and that when he first saw the youths he applied the brakes and sounded his horn. The approach of a vehicle in the opposite lane prevented him from swerving to avoid the boy so he skidded to a stop while Richard continued to run into the road. It appears that Joseph did all that he could reasonably do to avoid colliding with a boy who ran into his path. In our opinion, there is ample evidence to support the jury's decision that Richard was the sole proximate cause of the accident.

The defendants' appeal is sustained, the order appealed from is vacated, and the case is remanded to the Superior Court for entry of judgment in conformance with the jury's verdict.